**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| GARY E. BLAIS, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | 06-181ML |
| EQUITY ONE, INC., | ) | |
| *Defendant.* | ) | |

**DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT**

Defendant Equity One, Inc., by its undersigned counsel, pursuant to Federal Rules of Civil Procedure 55(c) and 81(c), hereby moves this Court for an order setting aside a clerk's default entered against Equity One on April 14, 2006 (the "Default") in Providence County Superior Court.

In support hereof, Equity One relies upon the Memorandum of Law and Affidavit of Mary B. Fisher, filed simultaneously herewith.

April 21, 2006

**EQUITY ONE, INC.**

By its Attorneys,

William M. Dolan III (#4524)
Brian J. Lamoureux (#6211)
Brown Rudnick Berlack Israels LLP
121 South Main Street
Providence, RI 02903
401-276-2600
401-276-2601 Facsimile

**CERTIFICATION**

I hereby certify that on April 21, 2006 I caused this document to be sent via facsimile and first class mail to:

Gary E. Blais
272 Broadway
Providence, RI 02903

Brian J. Lamoureux

# 50222157 v1 - LAMOURBJ - 009999/0001

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| GARY E. BLAIS, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | 06-181ML |
| EQUITY ONE, INC., | ) | |
| *Defendant.* | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO SET ASIDE ENTRY OF DEFAULT**

Defendant Equity One, Inc., by its undersigned counsel, hereby submits this memorandum of law in support of its Motion to Set Aside Entry of Default entered against Equity One on April 14, 2006 in Providence County Superior Court (the "Default").

**INTRODUCTION**

Equity One is a mortgage lender doing business in approximately 43 states. Equity One holds lender license #96006616 in Rhode Island. Plaintiff is a Rhode Island lawyer and a current mortgage borrower from Equity One. In this action, Plaintiff seeks damages of one million dollars ($1,000,000) plus punitive damages and costs arising out of Equity One's alleged reporting of certain credit information relating to Plaintiff.

In February, 2006, Plaintiff failed to pay the full monthly payment amount due on his mortgage loan from Equity One. As a result, the account was reported to the credit bureaus as past due when the regular monthly report was submitted in March. Although Equity One's reporting of this information was fully accurate, Equity One, as a courtesy to Plaintiff, posted the partial payment at Plaintiff's request, causing the credit reports to be updated.

As no good deed goes unpunished, Plaintiff filed a lawsuit in Providence County Superior Court on the very same day he discovered the reported information (*Gary E. Blais v. Equity One, Inc.*, PC 06-1639) and on the very same day that Equity One informed him that it would change the credit information (even though it had correctly reported the late payment in the first instance).

On March 24, 2006, Plaintiff attempted – but failed – to effect proper service of process pursuant to Rhode Island's long-arm statute. Plaintiff purportedly served his complaint on Equity One by mail pursuant to Rhode Island's long arm statute on March 24, 2006. Based upon this ineffective service of process, Plaintiff precipitously sought and obtained an entry of default from the Superior Court clerk – the moment the twenty-day answer period expired.

In an affidavit submitted with his request for the Default, Plaintiff averred – under oath – that he had suffered damages totaling $1,000,000. However, Plaintiff does not offer a single fact to substantiate this amount and, in fact, tacitly acknowledges that this amount is not a sum certain due Plaintiff as required by law for an entry of default. Rather, fairly read, Plaintiff's allegations show that this $1,000,000 in purported damages is simply an estimate of damages that he has incurred and will incur in the future. Thus, Plaintiff has obtained a $1,000,000 entry of default despite having suffered hardly any damage at all. Plaintiff's opportunism should not be countenanced and Equity One should not be denied the right to challenge Plaintiff's gross overreaching.

Therefore, the Default should be set aside for at least six reasons.

First, Plaintiff failed to properly serve Equity One with the summons and complaint as required by Rhode Island's long-arm statute (R.I. Gen. Laws § 9-5-33) and Rule 4(f)(2).

Second, Equity One has numerous meritorious defenses to Plaintiff's complaint. In

February 2006, Plaintiff did not submit the proper amounts due under his loan with Equity One. Equity One reported this accurate information to the credit bureaus. Thus, Equity One published no false information whatsoever relating to Plaintiff. Regardless, as a courtesy to Plaintiff, on March 22, 2006, Equity One informed Plaintiff that it requested a credit report amendment on the very same day that Plaintiff requested this amendment – which is also the very same day that Plaintiff filed his complaint.

Third, Plaintiff's complaint fails to state a claim upon which relief may be granted. Plaintiff purportedly bases his claims on federal laws that either do not exist or are otherwise inapplicable to Equity One. Likewise, Plaintiff's common law defamation claims are preempted by federal statute.

Fourth, Plaintiff is not entitled to the entry of judgment by default by the Clerk under Rule 55 because the amount claimed by Plaintiff is not a "sum certain or a sum which can by computation be made certain." Rather, the amount sought by Plaintiff is wholly speculative – discovery and a trial must be had on Plaintiff's alleged "damages."

Fifth, Plaintiff has clearly "laid-in-wait" at the courthouse steps for the purported expiration of the twenty-day answer period. Given Plaintiff's failure to properly serve process on Equity One and the substantial sum claimed by Plaintiff, equity requires the Default to be set aside so that Equity One can have its day in court. Otherwise, Equity One's right to due process will be denied.

Finally, Plaintiff will suffer no prejudice if the Default is set aside.

**ARGUMENT**

Default judgments are strongly disfavored in federal courts. *General Tel. Corp. v. General Tel. Answering Service*, 277 F.2d 919 (5th Cir. 1960); *Ahmad v. Levi*, 414 F. Supp. 597

(D.C. Pa. 1976) (law favors adjudication on merits, especially when party against whom default is sought has meritorious defenses). Pursuant to Federal Rule of Civil Procedure 55(c), a default may be set aside for "good cause shown."[1] Although this is a "mutable standard" and case-specific, the First Circuit has established the following test to consider when deciding whether to set aside a default: (1) whether the default was willful; (2) whether setting it aside would prejudice the adversary; (3) whether a meritorious defense is presented; (4) the nature of the defendant's explanation for the default; (5) the good faith of the parties; (6) the amount of money involved; and (7) the timing of the motion [to set aside entry of default]. *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 12 (1st Cir. 2003).

Consideration of all of the foregoing factors militates in favor of setting aside the Default.

**A. The Default Was Not Willful And Equity One Acted In Good Faith.**

Setting aside a default is proper where a plaintiff fails to effectuate proper service on a defendant. *See, e.g., Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. 1987) ("a judgment is void where the requirements for effective service have not been satisfied"); *Marshall v. Labor & Indust.*, 89 F. Supp. 2d 4, 11 (D.D.C. 2000) (default improper when service of process "has not been achieved…"). In order to avail oneself of Rhode Island's long-arm service procedures, a plaintiff must strictly comply with Superior Court Rule 4's specific service requirements. Rule 4(f)(2) allows service upon a foreign corporation in the following manner:

> …by delivery of a copy of the summons and complaint by any disinterested person to the president, secretary, or treasurer of such corporation or to any agent or attorney for service of process designated by the corporation in the state of incorporation, or by mailing a copy of the summons and complaint to any such officer

---

[1] Pursuant to FRCP 81(c), the Federal Rules apply to removed actions. Therefore, Equity One's analysis here is based primarily on FRCP 55(c). Rhode Island's Rule 55(c) is exactly the same as FRCP 55(c).

> or agent or to the corporation at its business address designated in the state of incorporation by registered or certified mail, return receipt requested, or by any other method ordered by the court…(emphasis added)

Plaintiff failed to meet the requirements of Rule 4(f)(2). Equity One's business address designated in the state of its incorporation (Delaware) is in Marlton, New Jersey. *See Affidavit of Mary Fisher* ("Fisher Aff.", ¶ 4), attached hereto as *Exhibit A*. Equity One's headquarters is located in Marlton, New Jersey. Equity One's President, Secretary and Treasurer are all located in Marlton. In addition, Equity One has registered with the Rhode Island Secretary of State to do business in Rhode Island and has appointed CT Corporation in Providence as its agent for service. *See Exhibit B*. This information was readily available on the Secretary of State's website. Yet, Plaintiff improperly chose to serve Equity One via certified mail at its customer service center in Cherry Hill, not its registered agent for service or its proper corporate headquarters in Marlton. Then, the moment that the twenty day answer period expired, Plaintiff pounced and obtained the Default.

Plaintiff sent the summons and complaint via certified mail to "Equity One, 112 Woodcrest Road, Cherry Hill, NY 08003." As an initial matter, this is the wrong street address – Equity One has an office at 121 Woodcrest Road. Second, this location is merely one of Equity One's many servicing centers. Contrary to Rule 4(f)(2), Plaintiff did not address the summons and complaint to Equity One's corporate headquarters, president, secretary, treasurer, attorney or agent for service of process. Thus, service was ineffective and no default should have entered.

This factor alone requires the Default to be set aside.

**B. Equity One Has Numerous Meritorious Defenses To Plaintiff's Complaint.**

1. Equity One could not have violated the "Fair Debt Reporting Act" because no such law exists.

Plaintiff's Complaint fails to state any claim against Equity One that is supportable under state or federal law. In his Complaint, Plaintiff appears to allege that Equity One violated various laws. First, he alleges that Equity One violated "15 U.S.C. § 1601, otherwise described as the Federal Fair Debt Reporting Act." *See* Complaint, at 1. However, 15 U.S.C. § 1601 is the Federal Truth in Lending Act ("TILA"). TILA relates to the form and content of disclosures in various credit transactions – it has no bearing on the reporting of credit information.

Also, contrary to Plaintiff's allegations, there is no such law as the "Fair Debt Reporting Act." Virtually all of Plaintiff's allegations are based under the "Fair Debt Reporting Act," which does not exist. Thus, on its face, Plaintiff's Complaint is patently defective and fails to state any claim whatsoever.

2. Equity One is not subject to the Fair Debt Collection Practices Act.

Second, Plaintiff alleges that Equity One violated the "Fair Debt Collection Practices Act" ("FDCPA"). However, Equity One is not a "debt collector" subject to the FDCPA because Equity One is in the mortgage and lending businesses; it is not in the business of collecting debts owed to third parties. *See* 15 U.S.C. § 1692a. Accordingly, all of Plaintiff's claims for violations of the FDCPA fail as a matter of law.

3. Equity One is not liable under the Fair Credit Reporting Act (15 U.S.C. 1681 *et seq.* ("FCRA")).

Plaintiff does not allege that Equity One violated FCRA. In fact, Plaintiff's complaint does not contain a single reference to FCRA. However, notwithstanding the opacity of Plaintiff's Complaint in this regard, and assuming *arguendo* that Plaintiff believes his claims lie

under FCRA, Equity One will address them here and explain why those claims will fail along with Plaintiff's other claims.

Equity One acknowledges that FCRA requires furnishers of credit information to report credit information correctly. *See* 15 U.S.C. § 1681s-2(a)(1)(A) and (B)(i) and (ii). However, FCRA does not create a private right of action for consumers for alleged violations of FCRA by furnishers of information. In fact, FCRA expressly precludes consumers from seeking damages under FCRA for such violations, and reserves enforcement for violations to various federal and state agencies. *See* 15 U.S.C. §1681s-2(c) ("Sections 1681n and 1681o [civil liability] do not apply to any failure to comply with subsection (a) of this section…") and §1681s-2(d) ("Subsection (a) of this section shall be enforced *exclusively* under section 1681s of this title by the Federal agencies and officials and the State officials identified in that section."). Therefore, Plaintiff has no claim under FCRA.

In addition to the insuperable legal bar to Plaintiff's claims under FCRA, Plaintiff offers no facts that would even remotely give rise to any claim. Plaintiff is currently a mortgage borrower at Equity One. *Fisher Aff.*, ¶ 6. Under Plaintiff's mortgage with Equity One, Plaintiff's mortgage payments are due by the first of each month, but there is a fifteen-day grace period before late charges are imposed. *Id.* Plaintiff made his February 1, 2006 mortgage payment to Equity One on or about February 22, 2006, three weeks after it was due, and seven days past the grace period. *Fisher Aff.*, ¶ 7. Even then, Plaintiff's payment was short by $31.72 from the required amount of $1,282.71. *Id.*. Plaintiff made no further payment before February 28th, the last day of the month. Thus, as of that date, the Plaintiff still had not made his February 1, 2006 payment in full. *Fisher Aff.*, ¶ 7-8.

Typically, Equity One sends its electronic record tapes to the credit bureaus on the second Tuesday of the month for the prior month (i.e. February's tapes are sent on the second Tuesday of March). *Fisher Aff.*, ¶ 8. This information consists of, among other things, a "snapshot" of the loan status and activity as of the last day of the prior month. *Id.* Thus, on the second Tuesday in March, the tape sent to the credit bureaus reflected information as of February 28, 2006. *Id.* This tape reflected Plaintiff's February 1, 2006 payment as being due since Plaintiff had not paid the required monthly amount in full. *Id.* On March 8 and March 9, 2006, an Equity One representative telephoned Plaintiff to inquire about his arrearage. *Fisher Aff.*, ¶ 9. As a courtesy to Plaintiff, Equity One removed the short payment from suspense status and applied the short payment to the outstanding obligation. *Id.*

According to Plaintiff, he closed a loan with New Century Mortgage on March 16, 2006. *See* Complaint, at 2. After this loan had closed, and after Plaintiff had freely and willingly agreed to the terms of that loan, Plaintiff obtained a credit report on March 22, 2006 from a credit bureau. *Id.* On the same day that he obtained this credit report, Plaintiff spoke with Equity One's customer service department to dispute the February delinquency apparently reflected on the credit report. *Fisher Aff.*, ¶ 10. In response to this phone call from Plaintiff, Equity One's customer service representative requested – via electronic means – that Plaintiff's credit information be amended even though Equity One had reported Plaintiff's payments accurately. *Id.* Equity One also advised Plaintiff on March 22, 2006 that his credit report would be amended to reflect a current account. *Id.* Notwithstanding the foregoing, Plaintiff filed his lawsuit in Superior Court on the very same day even though Equity One had taken all necessary steps required by law – and then some.

In light of the foregoing, Equity One has significant and meritorious defenses to Plaintiff's stated claims and his unasserted claims under FCRA. Accordingly, this factor militates in favor of Equity One and setting aside the Default.

4. Equity One did not defame Plaintiff.

Finally, Plaintiff alleges that Equity One defamed Plaintiff. However, Plaintiff's common law defamation claim is preempted by FCRA. Under FCRA,

> …no consumer may bring any action or proceeding in the nature of defamation…with respect to the reporting of any information against any…person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to [FCRA]…except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e). *See, e.g., Greenwood Trust Co. v. Conley*, 938 P.2d 1141 (Colo. 1997). Thus, Plaintiff has no common law defamation claim against Equity One in the context of credit reporting. Also, assuming that Plaintiff could press his common law defamation claim, to sustain such a claim under Rhode Island law, Plaintiff has a "substantial burden," and must show that the statement is "false and malicious, imputing conduct which injuriously affects [plaintiff's] reputation, or which tends to degrade him…in society or bring him…into public hatred and contempt…" *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 750 (R.I. 2004) (citations omitted). Plaintiff has not offered any facts that Equity One's reporting was false or imputed conduct to Plaintiff that would bring him into "public hatred and contempt." To the contrary, Congress has gone to great lengths to preserve the privacy of credit records and shield such records from public view. Thus, Plaintiff has not suffered any degradation or public hatred or contempt.

**C. A Substantial Amount Of Money Is Involved.**

The amount of the Default exceeds one million dollars – a substantial sum of money. This factor militates in favor of Equity One because Equity One is entitled to its day in court with respect to such a substantial amount. *Security Pacific Credit Ltd., et al. v. Lau King Jan*, 517 A.2d 1035, 1037 (R.I. 1986) ("a significant body of opinion would support resolving doubts in favor of removal of the entry of default, particularly in an action where large sums are involved in the suit.") (citations omitted). This is especially true where there are serious questions about the propriety and basis for Plaintiff's million dollar claim and the defective manner in which Plaintiff served his complaint.

**D. Equity One Has Acted Diligently In Filing This Motion.**

To date, Plaintiff has not notified Equity One of the Default. Rather, Equity One, by its undersigned counsel, learned of the Default in the late afternoon of April 19, 2006 after retaining Brown Rudnick and obtaining the Superior Court docket sheet. Thus, Equity One has acted with due dispatch in preparing and filing this motion, and this factor weighs in favor of Equity One.

**E. Plaintiff Should Not Have Received An Entry Of Default Pursuant To Rule 55(a).**

Under Superior Court Rule 55, a clerk may enter default and default judgment as follows:

> (a) When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.
>
> (b) When the plaintiff's claim against a defendant is for a <u>sum certain or for a sum which can by computation be made certain</u>, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for

> failure to appear and if the defendant is not an infant or an incompetent person (emphasis added).

The million dollars claimed by Plaintiff is by no means a "sum certain" nor could it be computed to be made certain.[2] To the contrary, Plaintiff's damages claim is a fanciful and speculative amount plucked out of thin air by Plaintiff. Plaintiff did not submit any accounting or analysis whatsoever to support his claim that the million dollars reflected the "losses and payments that the Plaintiff has <u>and will make</u> as a result of paying higher interest charges on consumer loans, mortgages and revolving charge accounts…" *See* Complaint, at 3 (emphasis added). In fact, Plaintiff conceded in his complaint that the only damage that he had allegedly suffered was "several thousands" with respect to a particular refinancing loan.[3] *Id.* Thus, Plaintiff's averment in his Affidavit of Amount Due – made under oath – is wholly unsupportable and rank speculation. Contrary to Plaintiff's sworn statement in his Affidavit of Amount Due, Equity One does not "owe" Plaintiff one million dollars. Equity One owes Plaintiff nothing. Plaintiff was not entitled to an entry of default on these facts.

**F. Equity And Fairness Require The Default To Be Set Aside.**

Plaintiff's approach in this case is quite transparent. One need only to look at the timeline of relevant events on a single date – March 22, 2006 – to conclude that Plaintiff is playing a million-dollar game of "gotcha" against Equity One:

---

[2] A "sum certain" is typically an amount fixed by contract or a promissory note. Default judgments may only be entered for a sum certain, which is a "sum susceptible to reliable computation or determined by the court after an accounting." *Black's Law Dictionary*, 6th Ed.

[3] However, even this claim is suspect. Although Plaintiff is vague on this point, Plaintiff's reference to "thousands of dollars" appears to relate to the increased interest he <u>may</u> pay <u>in the future</u> over the course of the New Century mortgage as a result of a higher interest rate. Thus, Plaintiff has not suffered any of this alleged "damage" at all. Most tellingly, Plaintiff does not identify his interest rate with New Century nor does he offer any facts to show what his interest rate would have been but for Equity One's reporting. Furthermore, Plaintiff does not offer a single allegation that the higher interest rate he obtained from New Century was a result of Equity One's reporting. Lkewise, Plaintiff does not reference the possibility that his prior credit history or other financial factors as possible reasons for the allegedly "exorbitant" interest rate.

- March 22, 2006 – Plaintiff "discovered" a purported error on his credit report;
- March 22, 2006 – Plaintiff speaks with Equity One's customer service department to dispute this information on his credit report (Fisher Aff., ¶ 10);
- March 22, 2006 – Equity One's customer service representative, as a courtesy to Plaintiff even though the reporting was accurate, requested a credit amendment via a web-based request system (*Id.*);
- March 22, 2006 – Equity One advises Plaintiff that his credit report would be amended to reflect a current account status (*Id.*);
- March 22, 2006 – Plaintiff mails a letter to Equity One's customer service department, demanding that if his credit reports were "not corrected within thirty (30) days I will file suit against you for defamation and other lawful causes of action…A recent action for similar defamation resulted in a multi-million dollar verdict." A copy of Plaintiff's correspondence is attached hereto as *Exhibit C*;
- March 22, 2006 – Plaintiff drafts, files and mails his complaint against Equity One – to the wrong address and in derogation of Rhode Island's long arm statute;
- April 14, 2006 – Plaintiff requests entry of default – the soonest possible moment to make such a request under the Rules of Civil Procedure.

Plaintiff seeks the exorbitant sum of one million dollars from Equity One, but fails to plead how he has been damaged in this amount. Rather, he merely claims that he lost "thousands" of dollars on a refinancing loan and that he will somehow be damaged in the future even though the information on his credit report was correct and was subsequently modified at his request. It is unfathomable how Plaintiff will suffer any future damage whatsoever now that his credit reports have been updated. Credit reports are not bells that cannot be unrung. Plaintiff

offers no facts, no analysis, no expert opinion – nothing – to substantiate his egregious and fanciful claim.

Finally, to the extent that the Default is not set aside and Plaintiff obtains a default judgment, Equity One will be deprived of its fundamental constitutional rights of due process. Equity One has the right to be served properly with process and challenge Plaintiff's money grab. Equity One deserves its day in court.

**G. Setting Aside The Default Will Not Prejudice Plaintiff.**

Plaintiff filed his complaint on March 22, 2006 and obtained the Default on April 14, 2006. Plaintiff will not be prejudiced in any way if the Default is set aside only several days after it has entered. However, in contrast, if the Default is not set aside, Equity One will suffer extreme prejudice and loss, especially in light of its numerous defenses, the substantial sum claimed by Plaintiff, and Plaintiff's procedural failures and opportunism.

## CONCLUSION

For the foregoing reasons, Equity One respectfully requests that the Court set aside the Default and award Equity One all such further relief that may be proper under the circumstances.

April 21, 2006

**EQUITY ONE, INC.**

By its Attorneys,

William M. Dolan III (#4524)
Brian J. Lamoureux (#6211)
Brown Rudnick Berlack Israels LLP
121 South Main Street
Providence, RI 02903
401-276-2600
401-276-2601 Facsimile

**CERTIFICATION**

I hereby certify that on April 21, 2006 I caused this document to be sent via facsimile and first class mail to:

Gary E. Blais
272 Broadway
Providence, RI 02903

Brian J. Lamoureux

# 50222142 v1 - LAMOURBJ - 009999/0001